RIESA B. GLASSMAN, Appellant, *v.* JACOB GLASSMAN, Defendant, and New York State Employees' Retirement System, Respondent.

Submitted October 10, 1955; decided January 12, 1956.

*Joseph B. Franklin* for appellant.   I. The complaint states a cause of action against both defendants.   II. The judgment of the Appellate Division and the order of Special Term deprived plaintiff-appellant of any adequate remedy.   (*Staten Is. Edison Corp.* v. *Maltbie*, 296 N. Y. 374; *New York Foreign Trade Zone Operators* v. *State Liq. Auth.*, 285 N. Y. 272.)

*Jacob K. Javits, Attorney-General* (*Abe Wagman, James O. Moore, Jr.,* and *William Alpert* of counsel), for respondent. I. The Retirement System is an agency through which the state

performs an integral government function. Fundamental principles establish its immunity from this suit in the Supreme Court for affirmative and coercive relief and the rendition of a money judgment against it. (*Samuel Adler, Inc.*, v. *Noyes*, 285 N. Y. 34; *Breen* v. *Mortgage Comm.*, 285 N. Y. 425; *Niagara Falls Power Co.* v. *White*, 292 N. Y. 472; *Psaty* v. *Duryea*, 306 N. Y. 413; *Matter of Mahon* v. *Board of Educ.*, 171 N. Y. 263; *New York City Employees' Retirement System* v. *Eliot*, 267 N. Y. 193; *General Mut. Ins. Co.* v. *Coyle*, 207 Misc. 362; *Matter of Hicka*, 180 Misc. 173; *Arkansas* v. *Texas*, 346 U. S. 368; *Kansas City Bridge Co.* v. *Alabama State Bridge Corp.*, 59 F. 2d 48, 287 U. S. 644; *People ex rel. Buffalo & Fort Erie Public Bridge Auth.* v. *Davis*, 277 N. Y. 292; *Sunlit Gardens* v. *Moore*, 183 Misc. 343.) II. The immunity of the state and its agencies is not in any way affected by the question of whether or not plaintiff has any other remedy. (*Buckles* v. *State of New York*, 221 N. Y. 418; *Staten Is. Edison Corp.* v. *Maltbie*, 296 N. Y. 374; *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362; *Atlantic Coast Line R. Co.* v. *Public Service Comm.*, 77 F. Supp. 675; *New York Foreign Trade Zone Operators* v. *State Liq. Auth.*, 285 N. Y. 272.)

FULD, J. The complaint before us, predicated on section 273 of the Debtor and Creditor Law, charges that defendant Jacob Glassman transferred a sum of money to the New York State Employees' Retirement System, also named as a defendant, with intent to defraud plaintiff, his wife, and to prevent her from collecting certain amounts due her on judgments which she had previously obtained against him. In this suit, brought in the Supreme Court, she seeks a judgment setting aside that transfer as fraudulent and void as to her so that she may receive from the fund transferred the amount of her judgments. Upon motion by the Retirement System, the court at Special Term dismissed the complaint as to that defendant, on the ground that the System, exercising a governmental function of the state, is immune from suit in the Supreme Court, and the Appellate Division unanimously affirmed.

The appeal is here by our leave to permit decision of a question, a very narrow and limited one, never before considered or passed upon by this court.

According to the complaint, plaintiff entered into a separation agreement with her husband in May of 1953, whereby he agreed to pay her $100 a month for her support and maintenance. He made two payments and then failed to make any others. Plaintiff thereupon brought several actions to recover the installments as they became due and recovered judgments against him for such installments totaling a trifle over $1,000. In the course of the supplementary proceedings that followed, it was discovered that Glassman, an employee of the State of New York and a member of the Retirement System, had recently received $2,627.22 from the sale of securities and had deposited that sum with the Retirement System '' to be credited to his account.''

The complaint then goes on to allege, first, that the transfer was fraudulent and void as to plaintiff, that it was made by Glassman '' without any consideration and with the sole intent to hinder the plaintiff in collecting the judgments heretofore obtained against * * * Glassman '' and, second, that Glassman was insolvent or on the brink of insolvency and that '' the transfer of the funds '', constituting his only tangible assets, '' was made with the intent and for the sole purpose of making it impossible for this plaintiff to collect the amount due her and to prevent and delay * * * [her] from collecting the judgments '' previously obtained.

The relief prayed is that the transfer to the Retirement System be declared fraudulent and a nullity as to plaintiff; that the funds be declared the property of Glassman and that the Retirement System act as trustee; and that Glassman and the Retirement System '' be directed to turn over '' to plaintiff the sum of $1,000.50, the amount of the aforesaid judgments in favor of plaintiff against her husband.

Section 273 of the Debtor and Creditor Law provides that '' Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.'' Apart from the problem as to the court's jurisdiction, there is no doubt that the complaint states a good cause of action to set aside and annul the conveyance, at least to the extent necessary to satisfy plaintiff's claim. (Debtor and Creditor Law, § 278; see *Hearn 45 St. Corp.* v. *Jano*, 283 N. Y.

139; *Society Milion Athena* v. *National Bank of Greece,* 281 N. Y. 282, 293.) The only question for decision, therefore, is whether the Supreme Court lacked jurisdiction over the Retirement System and the subject matter of the action, as the lower courts have held, because this is, in effect, a suit against the state.

The doctrine of sovereign immunity from suit, rooted in the ancient common law, was originally based on the monarchical, semireligious tenet that " the King can do no wrong ". (See Borchard, Government Liability in Tort, 34 Yale L. J. 1, 2; Borchard, Governmental Responsibility in Tort, 36 Yale L. J. 1, 17–41.) In modern times, it is more often explained as a rule of social policy, which protects the state against burdensome interference with the performance of its governmental functions and preserves its control over state funds, property and instrumentalities. (See *United States* v. *Lee,* 106 U. S. 196, 206; see, also, Block, Suits against Public Officers and the Sovereign Immunity Doctrine, 59 Harv. L. Rev. 1060, 1061.) The immunity extends as well to officers and agencies of the state engaged in carrying on its governmental functions, and a suit against such an officer or agency is regarded as one against the state itself. (See, e.g., *Psaty* v. *Duryea,* 306 N. Y. 413; *Breen* v. *Mortgage Comm.,* 285 N. Y. 425, 429–430; *Volk* v. *City of New York,* 284 N. Y. 279, 285–287.) Most states today provide some remedy whereby individuals with claims against the government may seek redress (see Claims against the State in Minnesota: Report of the Subcommittee on Immunity of the State from Suit, 32 Minn. L. Rev. 539, 545–556) and, in New York, the method has taken the form of a legislative waiver of the state's " immunity from liability " in section 8 of the Court of Claims Act. The suits to which the state has thereby consented, however, must be brought in the Court of Claims and in accordance with the procedure outlined in the Act governing that court.

Little argument is required to demonstrate that the Retirement System is the kind of state instrumentality that is clothed with the sovereign immunity of the state. It is engaged in an important governmental function, and providing retirement pensions, annuities and other employment benefits for its personnel, comparable to those received by the employees of private

industry, certainly assists and promotes the efficient operation of the affairs of the state itself. The close relationship between the Retirement System and the state government is apparent throughout the Civil Service Law provisions which create and govern the affairs of the System. Thus, the State Comptroller is made its administrative head and trustee of its several funds (§§ 52, 70, subd. b), the Attorney-General, its legal adviser (§ 53), and custody of its funds is placed in the charge of the Department of Taxation and Finance (§ 70, subd. d). The state, as an employer of members of the Retirement System, is obligated for the maintenance of various reserves and funds of the System, as well as for its expenses and the payment of all employee benefits (§ 67).

Indeed, plaintiff's brief presents no direct challenge to the System's status as a state agency. Instead, she urges that immunity should be denied the System because, first, she has no other remedy, since the Court of Claims would have no jurisdiction over either an equitable action of this kind (cf. *Psaty* v. *Duryea, supra,* 306 N. Y. 413, 416–417) or the person of the individual defendant and, second, the System enjoys the powers and privileges of a corporation and, therefore, " must also accept the responsibilities of a corporation " and be amenable to the jurisdiction of a court of equity. In our view, neither of these contentions can assist plaintiff; the immunity of a state agency is in no way affected by the lack of any other remedy (see *Psaty* v. *Duryea, supra,* 306 N. Y. 413, 419–420; *Buckles* v. *State of New York,* 221 N. Y. 418, 423–424) or by the fact that the agency is endowed with the powers and privileges of a corporation. (See, e.g., *Breen* v. *Mortgage Comm., supra,* 285 N. Y. 425, 430; *Matter of Hicka,* 180 Misc. 173, 175–176; *Arkansas* v. *Texas,* 346 U. S. 368, 370.)

Consequently, if the status of the Retirement System as an agency of the state, clothed with its sovereign immunity, were the only question in the case, an affirmance would necessarily follow. The conclusion that it is such an agency, however, only equates its position with that of the state, so that a suit against it would be deemed one against the state. The question still remains whether the present suit is one *against* the agency, and, by that token, *against* the state. The answer must be in the negative.

This is not the ordinary case of an individual who seeks recovery, out of the funds of the state or its agency, for a wrong it has done him. Plaintiff is here suing to have set aside a conveyance made by her husband to the Retirement System which is condemned by a positive statute of this state as fraudulent of her rights as a creditor (Debtor and Creditor Law, §§ 273, 278). The real controversy is between plaintiff and her husband. The transfer of his funds under the circumstances alleged is, the statute declares, of no effect insofar as the creditor is concerned; the nature of the creditor's recovery in such an action, this court has said, is to levy upon property " which he is entitled to treat as belonging to the debtor, albeit the title is ostensibly lodged elsewhere." (*Hearn 45 St. Corp.* v. *Jano, supra*, 283 N. Y. 139, 142.) So, in this case, title to the transferred funds is only " ostensibly lodged " in the System, and plaintiff is entitled to treat those funds as belonging to her husband.

The Retirement System, then, is not in any sense the real or primary defendant; it is in the case solely because the procedure for setting aside the fraudulent transfer requires that it be joined as a necessary party. The real defendant, the only one against whom an obligation is asserted by reason of alleged wrongful acts or conduct, is plaintiff's husband.

Moreover, the only parties who stand to lose or gain anything as a result of the litigation are plaintiff and defendant Glassman. If she prevails, she will be able to satisfy her judgments out of the assets of her husband; if not, they will remain secure in his account with the Retirement System, to be returned to him some day in the form of retirement benefits. In a sense, the System is in a position not unlike that of an innocent stakeholder, with nothing to lose or gain. Although the purpose of the transfer does not appear from the complaint, such a lump sum deposit as the husband made may be used only to obtain additional credit for prior service in certain specified employments (§ 60) or to secure additional benefits under the 55-year-old retirement plan (§ 86). If the System retains the funds, it is obligated for their eventual return to defendant, or the return of an equivalent sum, in one or another of these forms; if it " loses " those funds in this action, it is relieved of that obligation.

The situation is the same as if Glassman had fraudulently deposited all his assets with a bank or insurance company. It is precisely such " efforts on the part of a debtor to elude payment " of his creditors that the legislation condemns. (*Hearn 45 St. Corp.* v. *Jano, supra,* 283 N. Y. 139, 142.) It would be egregiously unfair to allow him to succeed and circumvent the statute merely because he chose the Retirement System as his depository. Certainly, no sound or valid reason, no rule of policy, requires such a result, and the principles of sovereign immunity should *not,* and fortunately do *not,* necessitate it.

Whether a suit is *against* the state is not determined solely by looking at the parties named, but depends also upon the nature of the litigation, the relief sought and the way in which it affects the state. " It is well settled ", it has been said (*Ex Parte Fitzpatrick,* 171 Ind. 557, 560), " that not every suit against an officer of the State is a suit against the State. A suit against an officer in which the State has no pecuniary interest, or substantive right to protect, is not a suit against the State." In order for the doctrine to apply and immunity to attach, " ' the relief asked must involve some direct or substantial interest of the state ' ". (*Lefebvre* v. *Somersworth Shoe Co.,* 93 N. H. 354, 357; see *Morrill* v. *American Reserve Bond Co.,* 151 F. 305, 308–310; *Ex Parte State,* 245 Ala. 193; *Fidelity & Deposit Co.* v. *Shaid,* 103 W. Va. 432; cf. *Commercial Union Ins. Co.* v. *Connolly,* 183 Minn. 1.) Thus, even though the doctrine of sovereign immunity bars suits against the state and its agencies alike, that doctrine will not be applied where the state or governmental unit, although named as a defendant, is not an actual or interested adverse party.

In *Fidelity & Deposit Co.* v. *Shaid* (*supra,* 103 W. Va. 432), for instance, one Shaid wrongfully converted certain construction materials and equipment which the State Road Commission had previously appropriated under the terms of a contractor's bond. According to those provisions, the appropriated property was to be used by the Commission to reduce the liability of the surety on the bond, the Fidelity & Deposit Co. The latter instituted suit against both the State Commission and Shaid, requesting that the suit threatened by the Commission be stayed until plaintiff's equities be ascertained, that Shaid be required to account for the material taken by him and that the value thereof

be treated as a fund applicable to the claim of the Commission against plaintiff. The court upheld the complaint, despite explicit provision of the Constitution of West Virginia " that the State shall never be made defendant in any court of law or equity " (p. 438). In reaching its conclusion and in declining to apply the doctrine of immunity, the Supreme Court of Appeals declared that " The real defendant is Shaid, for he will be the only person who will be required to pay, if the averments of fact be true. No money judgment is sought against the Commission. Its relation to the property involved is in the nature of that of a trustee, holding the property or its value for the benefit of the surety " (p. 439).

And in *Morrill* v. *American Reserve Bond Co.* (*supra,* 151 F. 305), the defendant corporation had deposited various bonds and mortgages with the state treasurer of Missouri pursuant to a statute requiring such a deposit as security for repayment of the bondholders of the corporation. Upon the corporation's insolvency, some of its bondholders brought an action to have these securities turned over to the receiver of the corporation, to be applied to the satisfaction of their claims. The state treasurer, joined as a defendant, opposed the proceeding on the ground that it was a suit against the state, prohibited by the Eleventh Amendment to the Federal Constitution. The court held that the suit was not *against* the state and directed that the securities be delivered to the receiver. " Neither the state nor the State Treasurer ", wrote the court, " has any interest in the trust property or in the event of this proceeding. No disposition of it can entail either loss or gain upon the state or upon any of its officers. The only parties to it who have any right to or interest in the suit itself, or in the trust property which is its subject, are the defendant corporations and their creditors. * * * It is not, therefore, a suit against the state, and it falls far without the ban of article 11 of the amendments to the Constitution " (p. 310).

So, in the case before us, " no disposition of it can entail either loss or gain upon " the state agency, since the only parties who have any interest in the suit, or in the property involved, are plaintiff and defendant Glassman. The Retirement System holds the funds in a quasi-trust capacity, for section 273 of the Debtor and Creditor Law stamps them funds of the debtor

husband upon which plaintiff may levy in satisfaction of her judgments. It is Glassman whose wrongful acts form the basis of the action and who will be required to pay if plaintiff prevails. The fact that a money judgment is sought against the state agency is of no consequence; it is merely a shorthand way of describing the total relief to which plaintiff is entitled. The actual effect of this suit is to set aside the fraudulent conveyance, thereby returning the ownership of the funds to the individual defendant, and plaintiff's recovery will, for all intents and purposes, be against him. The simple fact is that the state has no real or direct interest in the outcome of this case, and it is not, therefore, a '' suit against the state.''

The judgment of the Appellate Division and the order of Special Term dismissing the complaint should be reversed and the motion to dismiss the complaint denied, with costs in all courts.

DESMOND, J. (dissenting). This is a judgment creditor's action brought in Supreme Court, County of Kings, to set aside as in fraud of plaintiff's rights, a transfer of money by defendant Glassman to defendant New York State Employees' Retirement System. The complaint demands that the nullity of that transfer be adjudged and that the Retirement System be ordered to pay plaintiff from the amount so transferred, the amount due on her unsatisfied judgments against defendant Glassman. The courts below have granted the Retirement System's motion to dismiss the complaint as to it for lack of jurisdiction. That dismissal was correct, since the Retirement System is an agency or instrumentality of the State of New York and the State has not given its consent to be sued in the Supreme Court.

That the State of New York is not suable (except by another State, U. S. Const., art. III, § 2, and 11th Amendt.) without its own express consent is settled (*Kursted* v. *People*, 1 Abb. Prac. 385; *Lewis* v. *State of New York*, 96 N. Y. 71; *Quayle* v. *State of New York*, 192 N. Y. 47; *People ex rel. Swift* v. *Luce*, 204 N. Y. 478; *Chisholm* v. *Georgia*, 2 Dallas [U. S.] 419). '' It is inherent in the nature of sovereignty, not to be amenable to the suit of an individual *without its consent* '' (The Federalist, No. 81; see Davison, Claims against the State of New York, § 1.06). Till the State so consents, no suit at all can be brought

against it and questions as to liability, or as to the nature or sufficiency of an alleged cause of action are not reached (*Quayle* v. *State of New York,* 192 N. Y. 47, 50, 51, *supra*; *Breen* v. *Mortgage Comm.,* 285 N. Y. 425, 432). Therefore, in this as in every similar attempt to bring the State before the bar in its own courts, '' The essential question is whether the State has consented to a determination of its liability in the manner chosen by plaintiffs '' (*Breen* v. *Mortgage Comm., supra,* p. 432). Since the attempt here was to bring suit in the Supreme Court and since the State of New York has never authorized suits against itself to be brought in any court except the Court of Claims (Court of Claims Act, §§ 8, 9), the only conceivable question of law arising on this dismissal is as to whether this is a suit against the State. '' If the real defendant is the State, then, of course, it may be sued only as it has consented to be sued, to wit, in the Court of Claims '' (*Breen* v. *Mortgage Comm., supra,* p. 429, citing *Samuel Adler, Inc.,* v. *Noyes,* 285 N. Y. 34). That the Retirement System is an arm or agency of the State performing the public function of providing and regulating pensions for public employees cannot be doubted (N. Y. Const., art. V, § 7; art. IX, § 12; art. XVI, § 5; *Matter of Giannettino* v. *McGoldrick,* 295 N. Y. 208, 212; *Sunlit Garden* v. *Moore,* 183 Misc. 343; Civil Service Law, art. 4, '' New York State Employees' Retirement System ''). Suability was not provided as to it by the language of section 51 of the Civil Service Law which gave the Retirement System the '' powers and privileges of a corporation ''. In the *Breen* case (*supra*), the Mortgage Commission was held to be exempt from suit in the Supreme Court, although the statute made the commission a '' body corporate '' and empowered it '' to sue and be sued '' (L. 1935, ch. 19, §§ 2, 4, subd. 1).

Nor can there arise in the present suit any problem as to '' whether the action is against an agency of the State, or whether it is against a public official in his personal capacity '' (*Breen* v. *Mortgage Comm.,* 285 N. Y. 425, 429, *supra*; see *Erie R. R. Co.* v. *Sells,* 298 N. Y. 58, 62, and cases cited). No persons are here sued, individually or otherwise. The Retirement System is not a board or commission or other body of people. And the charge of this complaint is not of any trespass or usurpation or other wrongdoing on the part of the system or its officials or

employees (see *Ex Parte La Prade,* 289 U. S. 444, 455). The system, so far as appears, simply performed its statutory duties in receiving the money from one of its "members" (presumably pursuant to Civil Service Law, § 63). By statute, those moneys were commingled with others from various sources into the "funds of the retirement system" in the custody and under the management of the State Comptroller, to be held, invested and paid out pursuant to statutory provisions only (see Civil Service Law, §§ 70, 71, 72, 75, 76, 91). A lawsuit which demands judgment that such a transfer to the Comptroller is fraudulent and that part of the transferred moneys be paid to the plaintiff could not possibly be anything but a suit against the State itself (*Samuel Adler, Inc.,* v. *Noyes,* 285 N. Y. 34, *supra; Niagara Falls Power Co.* v. *White,* 292 N. Y. 472, 478). As such, "it may be maintained only in accordance with the consent of the State, *i.e.,* in the Court of Claims" (*Breen* v. *Mortgage Comm.,* 285 N. Y. 425, 429, *supra*). Even if this means that plaintiff will in the end be without a remedy, the courts have no power to legislate in her favor (*Psaty* v. *Duryea,* 306 N. Y. 413, 419).

It is suggested that there is or should be an exception to all this settled law, in favor of a suit like the present one wherein, it is said, the State is a "mere stakeholder" without any "pecuniary interest" of its own. It should be a sufficient answer that nowhere in the statutory or case law of New York is such an exception provided. Since the State's nonsuability is absolute until waived, and since such a waiver requires either constitutional or statutory sanction (Davison, Claims against the State, § 1.07) and since appellant can point to no such constitutional or statutory provision in New York law, her claim of exception cannot be accepted by our courts. We are referred to decisions in other jurisdictions but those cannot be binding or even applicable on the question of whether New York has consented to defend such a suit as this in our Supreme Court. And, indeed, those decisions from other jurisdictions, even if controlling here, would not govern this present situation. The rule they announce is this: "A suit against an officer in which the State of New York does have "a substantive right to protect, is not a suit against the State" (*Ex Parte Fitzpatrick,* 171 Ind. 557, 560, and cases cited thereat). Such a rule (and

we do not intimate that it is part of the law of New York) would not help this plaintiff, since, on the allegations of her complaint, the State of New York does have " a substantive right to protect " here. The State is sued here because, as alleged, a transfer was made as part of an attempt by the transferor to defraud his creditor. The transferee is not a nominal, but a necessary party defendant in any such suit (*Hammond* v. *Hudson Riv. Iron & Mach. Co.,* 20 Barb. 378; *Sage* v. *Mosher,* 28 Barb. 287; 13 Carmody-Wait on New York Practice, pp. 726–727). And the reason for that necessity is because the transferee " has an interest in the subject matter of the suit " (24 A. L. R. 2d 422, and cases cited). The title to and custody of Retirement System moneys is in the State of New York. The State's rights and obligations as to such funds are precisely stated in the statutes. The State cannot possibly be considered a " stakeholder " since a stakeholder is one who is a mere depositary of property in which he has no interest and to which he makes no claim, which he admits belongs to one or the other of rival claimants, and as to which he has the naked authority to deliver to one or the other on the happening or nonhappening of a certain contingency (*State* v. *Dudley,* 127 N. J. L. 127; *Oriental Bank* v. *Tremont Ins. Co.,* 45 Mass. 1, 10). The Retirement Fund's status bears no resemblance to that.

The judgment should be affirmed, with costs.

Conway, Ch. J., Froessel and Van Voorhis, JJ., concur with Fuld, J.; Desmond, J., dissents in an opinion in which Burke, J., concurs; Dye, J., taking no part.

Judgment of Appellate Division and order of Special Term reversed and matter remitted to Special Term for further proceedings in accordance with the opinion herein, with costs in all courts.